IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REZA (RAY) LESANE,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>HAWAIIAN AIRLINES, INC.; MARK DUNKERLEY,<br><br><br>　　　　　　　Defendants. | CIVIL NO. 19-00179 JAO-KJM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; AND REMANDING STATE CLAIMS** |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; AND REMANDING STATE CLAIMS**

Plaintiff Reza Lesane ("Plaintiff") brings claims under federal and state law against his former employer Defendant Hawaiian Airlines, Inc. ("Hawaiian") and its former CEO, Defendant Mark Dunkerley ("Dunkerley") (collectively, "Defendants").  Presently before the Court are the parties' cross-motions for summary judgment on Plaintiff's affirmative claims and Defendants' separate motion for summary judgment on some of their crossclaims.  For the reasons stated below, Plaintiff's Motion for Summary Judgment [ECF No. 93] is DENIED;

Defendants' motion [ECF No. 87] is GRANTED IN PART as to Plaintiff's federal claims; and the parties' remaining state law claims are REMANDED.

## I.     BACKGROUND

### A.     Facts[1]

Around two decades ago, Plaintiff worked as a mechanic for Hawaiian. ECF No. 88 ("Def. CSF") ¶ 1; ECF No. 129 ("Pl. CSF") ¶ 1.  During that time, he filed five equal employment charges against Hawaiian and two separate discrimination lawsuits (in 1998 and 2001).[2]  Def. CSF ¶ 1; Pl. CSF ¶ 1.  The parties entered into a settlement agreement in 2001, but issues arose with that agreement and so, a few months later, they entered into a second settlement agreement.  Def. CSF ¶¶ 3–4; Pl. CSF ¶¶ 3–4.  These settlement agreements required Plaintiff to release his discrimination claims against Hawaiian, and for Hawaiian (without admitting fault) to pay Plaintiff $230,000, cover his health insurance premiums until the end of August 2001, and release its claims for sanctions and breach of the first settlement agreement.  Def. CSF ¶ 5; Pl. CSF ¶ 5. Relevant here, the agreements also contained confidentiality provisions.  Def. CSF ¶ 41; Pl. CSF ¶ 41.

---

[1]  Unless otherwise indicated, the following facts are undisputed.

[2]  Plaintiff is African-American and alleged discrimination based on race.  *See* ECF No. 129-11.

About ten years later, in 2010, Plaintiff started working for the Federal Aviation Administration ("FAA") and in 2012 began inspecting commercial aircraft, including Hawaiian aircraft, in the Honolulu Certificate Management Office ("CMO") in his role as a Geographic Maintenance Inspector ("GMI") for the FAA.  Def. CSF ¶ 8; Pl. CSF ¶ 8.  Plaintiff never told the FAA that he sued Hawaiian, received a settlement from Hawaiian, and was receiving health care benefits from Hawaiian—although Plaintiff notes this was because the FAA did not ask him for that information and because an FAA policy document only requires a one-year waiting period between working in the private sector and working at the FAA, even if the private sector employment ended with a lawsuit.  Def. CSF ¶ 9; Pl. CSF ¶ 9.  Hawaiian did not object to Plaintiff serving as one of multiple GMIs who could inspect Hawaiian aircraft but could not disrupt Hawaiian's operations.  Def. CSF ¶¶ 10–11; Pl. CSF ¶¶ 10–11.

Still, the parties had some notable interactions.  First, in April 2014, a Hawaiian gate agent delayed Plaintiff from entering a restricted area to perform an inspection for 20 minutes; Plaintiff issued an FAA investigation letter, but ultimately concluded the matter did not warrant legal enforcement.  Def. CSF ¶ 12; Pl. CSF ¶ 12.  Plaintiff never alleged this incident constituted discrimination or retaliation because it was resolved, did not harm him, and Hawaiian responded to its agent's actions.  Def. CSF ¶ 13; Pl. CSF ¶ 13.

Next, in June 2014, Hawaiian realized it had been providing Plaintiff health care benefits beyond the 2001 cut-off date set forth in the parties' settlement, and so notified him that these benefits would be terminated effective June 30, 2014. Def. CSF ¶¶ 14–15. Plaintiff avers that he was unaware the coverage had even continued beyond 2011.[3] Pl. CSF ¶¶ 14–15.

A few months after this, Plaintiff reported corrosion on Hawaiian aircraft that resulted in Hawaiian grounding 13 of its aircraft. Def. CSF ¶¶ 16–17; Pl. CSF ¶¶ 16–17. While Defendants contend they grounded the planes based on how Plaintiff reported the corrosion (as compared to its usual experience with inspectors reporting less serious issues that did not require service interruption), Plaintiff objects that Hawaiian made the determination to ground the planes at its discretion. Def. CSF ¶¶ 16–20; Pl. CSF ¶¶ 16–20. Still, it is undisputed that Plaintiff did not tell Hawaiian that these groundings were unnecessary, and that Hawaiian's Principal Maintenance Inspector ("PMI"), i.e., someone more senior than Plaintiff at the FAA, agreed that the corrosion did not render the aircraft unsafe. Def. CSF ¶¶ 18, 21; Pl. CSF ¶¶ 18, 21.

---

[3] The parties' dispute about health benefits Hawaiian provided to Plaintiff and Hawaiian's corresponding counterclaims on this topic are the subject of a separate motion for summary judgment also presently before the Court. *See* ECF No. 84. But those facts and issues are not material to Plaintiff's federal claims. Because the Court grants judgment in Defendants' favor on Plaintiff's federal claims and declines to exercise supplemental jurisdiction over the parties' remaining state claims, the details relevant to that separate motion need not be addressed herein.

The parties' next interaction—and the key event giving rise to this dispute—occurred in 2017 when Hawaiian learned the FAA promoted Plaintiff to be Hawaiian's temporary PMI, meaning he would serve as the primary airworthiness interface between Hawaiian and the FAA.  Def. CSF ¶¶ 23–25; Pl. CSF ¶¶ 23–25.  Although the parties disagree over the precise contours of a PMI's powers, they agree PMIs are tasked with assessing an airline's compliance with FAA regulations and have authority to recommend fines.  Def. CSF ¶ 25; Pl. CSF ¶ 25.  Based on this authority, Hawaiian determined Plaintiff's promotion to PMI presented a direct conflict of interest and an unacceptable risk to its operations, Def. CSF ¶ 26, although Plaintiff maintains Hawaiian merely wanted to retaliate against him for the lawsuits he filed decades earlier and simply preferred a more lax PMI.  Pl. CSF ¶ 26.  Hawaiian acted on its concerns by having three employees contact the FAA to state their belief that, if Plaintiff became Hawaiian's PMI, his prior lawsuits against Hawaiian created a conflict of interest:  Jonathan Goo (senior director of quality assurance) contacted the Honolulu CMO Office Manager; Charles Donley (in-house regulatory counsel) contacted the Director of the Office of Safety Standards; and Defendant Dunkerley (then-CEO) contacted the FAA Administrator.  Def. CSF ¶ 27.

After consulting with its legal counsel and labor relations expert, the FAA agreed, concluding that Plaintiff's ability to remain impartial while providing

regulatory oversight of Hawaiian aircraft – or at least the perception of his impartiality – was in question and presented a risk to the FAA such that it was not prudent to place him in that PMI position. Def. CSF ¶¶ 29–30, 35, 37. Plaintiff objects that the FAA only acted because it wanted to avoid inserting itself into the parties' dispute and because the Hawaiian employees relayed false information about Plaintiff's job performance to the FAA, although he fails to point the Court to any specific, admissible evidence to support these contentions in his concise statement. Pl. CSF ¶¶ 27, 29–30, 35, 37. Regardless, it is undisputed that only the FAA had the authority to rescind Plaintiff's PMI offer (which it did) and that its stated reasons for doing so echoed Hawaiian's concerns about a conflict of interest or the appearance of such a conflict. Def. CSF ¶¶ 29–31; Pl. CSF ¶¶ 29–31. And although the FAA rescinded Plaintiff's Hawaiian PMI offer, it also repeatedly offered him a promotion to serve as the PMI for Aero Micronesia—a position that offered the identical pay, location, job responsibilities, and opportunity for growth as the rescinded offer. Def. CSF ¶ 32; Pl. CSF ¶ 32 (citing evidence, none of which dispute these facts). Although Plaintiff previously applied for the same Aero Micronesia PMI position and, when initially denied, complained that FAA's denial was improperly based on his race, Plaintiff nonetheless declined this alternate Aero Micronesia PMI offer, objecting now that it was never provided in writing. Def. CSF ¶¶ 32–34; Pl. CSF ¶¶ 32–34. This lawsuit followed.

## B.      Procedural History

Plaintiff initially filed suit in state court and Defendants removed the action to this Court. ECF No. 1. The Court rejected Plaintiff's request to remand the action back to state court, concluding he alleged federal claims.[4] ECF No. 22. Plaintiff filed a First Amended Complaint alleging claims for discrimination and retaliation under federal[5] and state law (Counts 1–4, 8 and 9); intentional infliction of emotional distress ("IIED") (Count 5); violations of the Hawai'i Constitution (Count 6); and breach of contract (Count 7). ECF No. 34. Defendant filed an answer, alleging counterclaims for breach of the implied covenant of good faith and fair dealing (Counterclaim 1); unjust enrichment (Counterclaim 2); recovery of payment under mistake of fact (Counterclaim 3); recoupment (Counterclaim 4); and money had and received (Counterclaim 5).

The parties filed cross-motions for summary judgment on Plaintiff's claims. *See* ECF Nos. 87, 93.[6] Hawaiian also filed a separate motion for summary

---

[4] Although the Court concluded federal question jurisdiction existed, it rejected Defendants' alternative argument that removal was proper because the Court could somehow retain jurisdiction over the parties' settlement agreement (for nearly two decades) and that, because this action involved a claim for a breach of that agreement, removal jurisdiction was appropriate. *See* ECF No. 22 at 6–7.

[5] Plaintiff brings federal claims under 42 U.S.C. § 1981 (Count 8) and Title VII (Count 9).

[6] The Court struck Plaintiff's first-filed motion for summary judgment on his claims for failing to comply with the Local Rules. *See* ECF Nos. 81, 82, 89.

judgment on Counterclaims 2–5.  *See* ECF No. 84.  The Court held a hearing on these motions on February 28, 2020.

## II.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  "This burden is not a light one."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  *See id.* at 323–24; Fed. R. Civ. P. 56(c)(1).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  Rather, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citation, internal quotation marks, and ellipsis omitted).  A district court "need not

examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

Plaintiff moved for summary judgment in his favor on his claims for: breach of contract; violations of 42 U.S.C. § 1981, Title VII, and HRS § 378-2 for retaliating against him for filing prior lawsuits against Hawaiian; and IIED. *See* ECF No. 93. Plaintiff's motion yet again fails to comply with the Local Rules because, even assuming he properly limited his concise statement to factual assertions, he still failed to support each assertion with a citation that "identif[ies] the page and portion of the page of the document referenced" as required under Local Rule 56.1(b). *See* ECF No. 94 (citing only generally to various exhibits without identifying the relevant page range or paragraph number); *see also* ECF No. 89 (striking Plaintiff's prior-filed motion for summary judgment because it did not comply with Local Rule 56.1 and cautioning that the Court would strike future filings that violate Local Rule 56.1).

The Local Rules make clear that "the court shall have no independent duty to review exhibits in their entirety, but rather will review only those portions of the

exhibits specifically identified in the concise statements." LR56.1(f). Where, as here, Plaintiff is the moving party who has the burden of showing no material dispute of fact and has the burden of affirmatively proving his claims, such haphazard briefing and record development cannot suffice to meet those burdens. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 & n.14 (9th Cir. 2002) (noting that "[t]he efficient management of judicial business mandates that parties submit evidence responsibly" and holding that a district court may exclude evidence when a party relies on deposition testimony without citing to page and line numbers or declarations without citing to paragraph numbers). The Court therefore DENIES Plaintiff's motion. This is particularly appropriate because the Court already warned Plaintiff about any continuing failure to comply with Local Rule 56.1, and Plaintiff's repeated failure to comply with the Local Rules in this case. *See* ECF Nos. 78, 109 (striking documents for failing to comply with Local Rules); *see also* ECF No. 132-1 (failing to comply with LR7.4); ECF No. 129 (failing to comply with LR56.1(c)); ECF No. 151 at 2 n.1 (noting repeated failure to comply with LR10.2).

## B.     Defendants' Motions for Summary Judgment

Defendants seek summary judgment on all of Plaintiff's claims, and also seek summary judgment in their favor as to certain counterclaims. The Court

agrees that judgment in Defendants' favor as to Plaintiff's federal claims is appropriate.

### 1. The *Noerr-Pennington* Doctrine Bars Counts 8 and 9

Defendants argue the *Noerr-Pennington* doctrine bars Plaintiff's federal claims (Counts 8 and 9) because each is based on their protected petitioning of a federal agency, the FAA. "The doctrine immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies." *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) (citation omitted). Although it initially applied in anti-trust suits, the Supreme Court has made clear that *Noerr-Pennington* now applies "with full force in other statutory contexts." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930 (9th Cir. 2006) (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002)); *see also Manistee Town Ctr.*, 227 F.3d at 1092–93 (applying doctrine to 42 U.S.C. § 1983 claims based on petitioning the public). To determine if a defendant's conduct is immune from suit under this doctrine, a Court must: "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected

petitioning activity." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).[7]

Here, there is no dispute that Plaintiff's federal claims are premised on Defendants' communications with FAA officials where they referenced Plaintiff's past lawsuits against Hawaiian, relayed concerns about the litigation creating a conflict of interest, and expressed reservations and misgivings about whether Plaintiff could be impartial. Def. CSF ¶ 27; Pl. CSF ¶ 27. While Plaintiff argues that Defendants' calls to the FAA *also* attacked his character, the evidence he cites does not support that contention. *See* ECF No. 132 at 7 (citing ECF No. 129-18, Dunkerley Depo. at 42); *see also* ECF No. 142 at 15. Further, the only specific evidence Plaintiff points to in his concise statement to dispute these facts is his own declaration, which attests that Defendants told the FAA he was a "bad employee who had been fired" without indicating how *he* has personal knowledge of those conversations. *See* Pl. CSF ¶ 27 (citing ECF No. 129-1, ¶ 54);[8] *see also*

---

[7] In *Kearney*, the Ninth Circuit considered the first two factors and then evaluated whether the protected petitioning conduct could nonetheless be subject to liability under the relevant statute based on the "sham" exception to the doctrine. *See* 590 F.3d at 646.

[8] As stated above, the Court considers only those facts set forth specifically in Plaintiff's opposing concise statement of fact. Where Plaintiff cited exhibits purporting to raise a triable issue, the Court considers *only* the page or portion of the exhibit identified and, where no such page or portion is identified, *will not*

(continued . . .)

*Carmen*, 237 F.3d at 1028 (affirming summary judgment where there was no evidence of any basis in personal knowledge for plaintiff's testimony). Even if the Court were to search the record to find other evidence to support Plaintiff's arguments (which it need not and should not do), Plaintiff has not shown such evidence raises a triable issue, either.[9]

Regardless, Plaintiff has not articulated why such communications would render Defendants' conduct unprotected by *Noerr-Pennington* because Plaintiff does not dispute that, if successful, his suit seeking to impose liability on Defendants for raising concerns to the FAA about him serving as Hawaiian's PMI

---

(. . . continued)
review the exhibit in its entirety to guess at what Plaintiff relies on to raise a triable issue. *See* LR56.1(b), (f); *see also Orr*, 285 F.3d at 775 & n.14 (holding that trial court may exclude evidence not cited to with specificity); *Carmen*, 237 F.3d at 1031 (holding that it is unfair to both the district court and the moving party to require the district court to search the record for a genuine issue of fact when the non-moving party does not set out the specific facts).

[9] For example, Plaintiff points to the declaration of Mr. Mooty, which contains hearsay statements from Mr. Slutsky, *see* ECF No. 129-17 at 6, but fails to demonstrate such statements could be provided in an admissible form at trial. Thus, the Court may not consider them at summary judgment. *See, e.g.*, *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that district court may consider hearsay evidence submitted in an inadmissible form at summary judgment so long as the proponent of that evidence demonstrates that the underlying evidence could be provided in an admissible form at trial); *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1293 (9th Cir. 2019) (holding district court did not err in considering hearsay within declaration because proponent certified it would be able to submit that hearsay in an admissible form at trial).

would burden their ability to communicate with their federal regulator. *See Kearney*, 590 F.3d at 645 (explaining that the question at this stage "is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of [the plaintiff's] lawsuit would constitute a burden on petitioning rights" and noting that courts have "found petitioning rights burdened even though the plaintiffs were alleging misconduct in that petitioning" (citations omitted)); *cf. Sosa*, 437 F.3d at 932–33 ("A successful RICO claim would quite plainly burden [defendant's] ability to settle legal claims short of filing a lawsuit.").

Instead, Plaintiff objects that such communications with the FAA are not protected petitioning activity, arguing that *only* litigation or litigation-related conduct qualifies as petitioning. *See* ECF No. 132 at 9. Plaintiff is incorrect; the Ninth Circuit has held conduct akin to Defendants' constitutes petitioning. *See Manistee Town Ctr.*, 227 F.3d at 1092 (applying doctrine to claims under § 1983 based on petitioning the public, including by sending letters to citizens, encouraging media coverage, and lobbying local government officials); *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998) (holding that a lobbying effort designed to influence a state administrative agency's decision to issue a certificate relating to the establishment of a health care facility fell within the doctrine); *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 894 (9th

Cir. 1988) (discussing private meetings between individuals and city officials as within the doctrine).

Plaintiff is also incorrect that his federal retaliation claims necessarily fall outside the ambit of the *Noerr-Pennington* doctrine. As Defendants note, courts within this Circuit have dismissed Title VII and 42 U.S.C. § 1981 claims under this doctrine when they are based on a defendant's protected petitioning. *See Johnson v. United Airlines, Inc.*, Case No. 12-cv-02730-VC, 2016 WL 3626707, at *3 (N.D. Cal. July 6, 2016); *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179-MMM (JEM), 2015 WL 349443, at *9 (C.D. Cal. Jan. 23, 2015); *Ungureanu v. A. Teichert & Son*, No. CIV S-11-0316 LKK GGH PS, 2012 WL 1108831, at *9, *12 (E.D. Cal. Apr. 2, 2012), *report and recommendation adopted*, 2012 WL 13036782 (E.D. Cal. May 29, 2012); *Nazir v. United Air Lines*, No. CV 09-01819 CRB, 2009 WL 2912518, at *3 (N.D. Cal. Sept. 9, 2009). Plaintiff has not articulated how the federal statutes provide special authorization for him to burden Defendants' petitioning rights. The statutes could subject Defendants' petitioning conduct to liability, but only when that conduct falls under the "sham" exception to the doctrine. *See Kearney*, 590 F.3d at 646; *see also Sosa*, 437 F.3d at 939–40 (applying the *Noerr-Pennington* statutory construction presumption to conclude statute did not impose liability for certain petitioning conduct so long as it did not rise to the level of a sham).

Plaintiff, however, has not raised a triable issue regarding whether the "sham" exception applies here. *See Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 352 (9th Cir. 2014) (noting that "sham" exception is question of fact and summary judgment is not appropriate if the facts are in dispute). Plaintiff appears to argue that the "sham" exception applies because Defendants contacted the FAA to retaliate against him in the hopes of replacing him with a less vigilant PMI.[10]

Importantly, the scope of the sham exception depends on the branch of government involved. *See Kottle*, 146 F.3d at 1061. If the relevant petitioning conduct involves a legislative body, the sham exception is "extraordinarily narrow." *Id.* Even misrepresentations to a legislature do not amount to a sham. *See id.*; *see also Boone*, 841 F.2d at 896. When the relevant petitioning activity involves judicial processes, though, the sham exception is broader. *See Kottle*, 146 F.3d at 1061. In that context, the "sham" exception applies if: (1) a lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; (2) the conduct involves a series of meritless lawsuits brought for an unlawful purpose; or

---

[10] Plaintiff makes scattered references to the rust reporting incident; however, he points to no evidence—either direct or circumstantial—that his 2014 reports of corrosion bore any causal relationship to Defendants' decision to contact the FAA in 2017. Regardless, as discussed above, this motivation would not negate the fact that Defendants' conduct was protected petitioning. And, as discussed below, nor would it transform it into a "sham" petition.

(3) the alleged unlawful conduct consists of making intentional misrepresentations to a court that deprives the litigation of its legitimacy. *See Sosa*, 437 F.3d at 938; *see also Manistee Town Ctr.*, 227 F.3d at 1094–95 (noting petitioning conduct may be considered a "sham" in antitrust context only where the petitioner uses the government process—as opposed to the outcome of that process—as an anticompetitive weapon and that the plaintiff must allege direct harm from the process, rather than the outcome).

Where, as here, the petitioning conduct is directed at an administrative agency in the executive branch, the appropriate test for the "sham" exception depends on whether the executive entity in question more resembles a judicial body or a political entity. *See Kottle*, 146 F.3d at 1061–62. The crucial question, then, is whether the FAA operates with discretion and independence, characteristic of a political process, or whether it must instead follow formal rules and other enforceable standards subject to review, like an adjudicatory process. *See id.*

In this context, where Defendants informally petitioned FAA officials to reconsider a hiring decision in light of impartiality concerns about a PMI hired to serve as the primary airworthiness interface between Hawaiian and the FAA, the narrower "sham" exception applicable to political bodies applies. *Compare Manistee Town Ctr.*, 227 F.3d at 1094–95 ("Defendants petitioned county officials not to enter a lease, and attempted to energize members of the public to do the

same.  There are no enforceable standards by which either of the two prongs of the [judicial 'sham' exception] test can be applied.  The exception simply does not fit."), *with Kottle*, 146 F.3d at 1062 ("The [relevant] determination by the Department bears many indicia of a true adjudicatory proceeding.  The Department conducts public hearings, accepts written and oral arguments, permits representation by counsel, and allows affected persons to question witnesses.  The Department must issue written findings after its hearing.  Its decision is appealable, and that appeal is governed by APA procedures and statutory standards.  In all, we believe that this combination of facts makes the application of the judicial sham exception appropriate in this case.").  While the FAA may sometimes sit as an adjudicatory body, it did not do so *in this context* and instead merely exercised its independence and discretion in making a hiring decision.  *See* Def. CSF ¶ 29 (referencing FAA's internal consultations with its legal and labor experts regarding how to respond to Hawaiian's petitioning).  Plaintiff has not pointed to any evidence in dispute that would raise a triable issue as to the narrow political "sham" exception.  *See Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) (applying doctrine to defendant's letter to zoning official and concluding sham exception did not apply because, no matter his motives, defendant did not use government process as opposed to the outcome of that process to injure the plaintiff).

Yet, even if the judicial "sham" exception applied, Plaintiff still has not raised a triable issue. It is undisputed that the FAA recognized the impartiality concerns Defendants raised in their calls. There is no evidence Defendants engaged in this petitioning without regard to the outcome and with little expectation of success in the hopes that the process itself would harm Plaintiff. Indeed, Plaintiff repeatedly concedes that Defendants' goal *was* the outcome, i.e., having him removed as the PMI assigned to the Hawaiian certificate. *See* ECF No. 132 at 10 ("[Defendant Dunkerley] admits they continued to call and complain until they got the result they wanted. Plaintiff removed from the Position."). And Plaintiff also makes clear that the harm to him (rescinding his PMI offer) was caused by the *outcome* of Defendants' lobbying process.[11] *See Manistee Town Ctr.*, 227 F.3d at 1095; *Boulware v. State of Nev., Dep't of Human Res.*, 960 F.2d 793, 798 (9th Cir. 1992) (affirming summary judgment in defendant's favor based on *Noerr-Pennington*, noting petitioner's "success on the merits [which] is an important factor to be considered under the sham inquiry" and pointing to a lack of evidence that the petitioner used the legal process itself as an anti-competitive way to tarnish the plaintiff's reputation or impose costs or delay, without regard to the outcome of the petitioning and with no expectation of success (citations omitted)).

---

[11] *See, e.g.*, ECF No. 132 at 32 ("By acceding to Hawaiian' repeated demands for retaliation, Wes Mooty of the FAA discriminated against Plaintiff Lesane, and he perpetuated the effects of past discrimination into the future.").

For these reasons, Defendants' motion on Counts 8 and 9 is GRANTED based on the *Noerr-Pennington* doctrine.

### 2. Alternatively, Plaintiff's Federal Claims Fail on the Merits

Plaintiff alleges Defendants retaliated against him in violation of Title VII and 42 U.S.C. § 1981 by contacting the FAA in 2017 and referencing the lawsuits Plaintiff filed against Hawaiian in 1998 and 2001.[12]  The parties agree these statutory claims are analyzed under the same test.  *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (applying the same framework to retaliation claims under Title VII and § 1981).

Defendants argue there is no direct or circumstantial evidence in the record demonstrating that a retaliatory reason more likely than not motivated them to contact the FAA—and therefore that the typical *McDonnell Douglas*[13] burden shifting framework applies.  *See* ECF No. 87-1 at 15–16.  Plaintiff does not offer any argument in response, nor has he pointed the Court to any evidence that would raise a triable issue on this basis, so the Court applies the *McDonnell Douglas*

---

[12]  Although Plaintiff brings some of these claims against both Hawaiian and Dunkerley, he fails to object and so concedes that Title VII claims against individual defendants fail as a matter of law.  *See* ECF No. 87-1 at 25.  Summary judgment is thus warranted in Dunkerley's favor on any such claim on this basis, as well.

[13]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

framework.[14]  Even assuming Plaintiff met his burden of proving a prima facie case because (1) he engaged in protected activity by filing the discrimination complaints, (2) Defendants' phone calls to the FAA qualify as an adverse employment action, and (3) there was a causal connection between the two, *see Surrell*, 518 F.3d at 1105–06, Defendants have nonetheless set forth a legitimate, non-retaliatory reason for their actions:  they voiced concerns to the FAA about Plaintiff because his assignment to the Hawaiian certificate created a potential conflict of interest.  Def. CSF ¶ 26.

The burden thus shifts back to Plaintiff to show this stated reason regarding a concern over a conflict of interest was mere pretext.  *See Surell*, 518 F.3d at 1106.  Plaintiff has not offered evidence that would carry his burden of showing that this justification was pretextual:  he fails to identify evidence that would either directly persuade the Court that a retaliatory reason more likely motivated Defendants or indirectly demonstrate that Defendants' proffered explanation is unworthy of credence.  *See Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018).

None of the evidence Plaintiff points to in attempting to raise a triable issue

---

[14]  Plaintiff also references the Defendants' conduct being a "pre-text," which suggests he has chosen to rely on the *McDonnell Douglas* framework to oppose summary judgment.  *See* ECF No. 132 at 8.

disputes Hawaiian's claimed concern about a conflict of interest. *See* Pl. CSF ¶ 26.

Indeed, he points *only* to his own declaration attesting that "[u]nder the FAA Rules

there is no legitimate conflict of interest," ECF No. 129-1 ¶ 53, but a plaintiff's

"subjective personal judgments do not raise a genuine issue of material fact."

*Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (citation

omitted).[15] Nor does Plaintiff argue in his opposition that Hawaiian's disparate

treatment of Richard Emminger (an FAA employee and former Hawaiian pilot) is

probative of pretext. Regardless, it is undisputed that Mr. Emminger is not a PMI,

is not on a Hawaiian certificate, and thus is not similarly situated to Plaintiff. *See*

Def. CSF ¶ 40 (citing ECF No. 88-14 at 42–43 (Lesane Depo. at 221:17–222:10),

---

[15] Notably, Plaintiff does *not* cite to the FAA policy document regarding ethics and financial disclosures. *See* Pl. CSF ¶ 26 (failing to cite to ECF No. 129-10 at 5). Regardless, Plaintiff fails to offer any evidence tending to show Defendants were or should have been aware of this document that sets forth a guideline of a one-year waiting period between leaving private sector employment (even if under duress or after a lawsuit) and working at the FAA. *See* ECF No. 129-10 at 5. Moreover, the document makes clear the importance of avoiding "the appearance of conflict of interest," *id.*, which is precisely the concern the FAA cited as a reason to rescind the PMI offer. *See* Def. CSF ¶ 29 (noting concern with the perception of his impartiality and the risk this presented to the FAA); *see also* 5 C.F.R. § 2635.101(b)(14) (one of various regulations cited within the policy document, providing that "[e]mployees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part" and that "[w]hether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts"). Even if considered, then, this policy document is not "specific and substantial" evidence of pretext that would suffice to raise a triable issue with circumstantial evidence. *See Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010).

where Plaintiff himself attests as much); *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (noting that disparate treatment of similarly situated employees may be probative of pretext and that "individuals are similarly situated when they have similar jobs and display similar conduct" (footnote omitted)).

Instead, to support *their* position, Defendants point to the undisputed fact that the FAA concluded there *was* a conflict of interest—or at least the *appearance* of one—as evidence. Def. CSF ¶¶ 29–31, 35, 37. Again, none of the evidence Plaintiff focuses on disputes that the FAA ultimately agreed with Defendants' concerns based on its own assessment of the parties' history. *See* Pl. CSF ¶¶ 29–31, 35, 37. Defendants are therefore entitled to judgment in their favor on Plaintiff's retaliation claims on this basis, as well.[16]

---

[16] In his opposition, Plaintiff does not respond to Defendants' argument that they are similarly entitled to judgment as a matter of law to the extent Plaintiff proceeds on a theory of race discrimination. Plaintiff thus waives any such claim that, in any event, lacks merit for the same reasons articulated above regarding his retaliation claims. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (holding that failure to raise argument in opposition to summary judgment constitutes waiver of that argument); *see also Yonemoto v. McDonald*, Civil No. 11-00533 JMS/RLP, 2015 WL 1863033, at *7 (D. Haw. Apr. 22, 2015) (citing cases). Similarly, Plaintiff does not respond to Defendants' argument that any claim for aiding and abetting also fails as a matter of law, and so concedes that summary judgment in Defendants' favor is also warranted as to those claims.

### 3. The Court Declines to Exercise Supplemental Jurisdiction over the Parties' Remaining State Law Claims

The only remaining claims, then, are the parties' various state law claims and counterclaims. A federal court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."[17] 28 U.S.C. § 1367(c); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court

---

[17] As discussed above, the Court rejected Defendants' theory that Plaintiff's claim for breach of a settlement agreement made removal jurisdiction proper. And at the hearing, neither party argued that the Court must retain jurisdiction over that claim, even if it declined supplemental jurisdiction over the other remaining claims. Moreover, even if the Court could exercise *ancillary* jurisdiction over that claim, there would still be no remaining claims over which the Court has *original* jurisdiction, meaning the Court could not even exercise supplemental jurisdiction over the parties' other state claims based on that remaining breach of contract claim. *See Newport Yacht Club v. City of Bellevue*, Case No. C09-0589-JCC, 2009 WL 10676465, at *3–4 (W.D. Wash. July 27, 2009) (concluding that although court had ancillary jurisdiction to enforce terms of settlement agreement, it could not exercise supplemental jurisdiction over additional state law claims because ancillary jurisdiction, which is an insufficient basis for removal, similarly cannot provide the *original* jurisdiction necessary to hear related, supplemental claims under 28 U.S.C. § 1367). The question, then, is whether the Court should exercise supplemental jurisdiction over the remaining state law claims where all claims over which the Court has original jurisdiction have been dismissed.

should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon*, 484 U.S. at 350). These are the same factors to be evaluated in determining whether state law claims should be dismissed or remanded to state court. *See Carnegie-Mellon*, 484 U.S. at 351–53. A district court has discretion to remand to state court a removed case involving supplemental claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving supplemental claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the supplemental jurisdiction doctrine. *See id.* at 357.

Here, considerations of judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over Plaintiff's remaining state law claims and Defendants' remaining counterclaims and remanding them to state court. The parties' remaining state law claims are numerous and substantial—ranging from contractual disputes over health care benefits to protections under Hawai'i law for whistleblowers. Indeed, based on the Court's review of the pending motions, there appear to be multiple issues of first impression under Hawai'i law and, because state courts have the primary responsibility for developing and applying state law, the "values of judicial economy, convenience, fairness and comity" do not favor

retaining jurisdiction in this case. *See Acri*, 114 F.3d at 1001; *see also* 28 U.S.C. § 1367(c)(1) (declining supplemental jurisdiction appropriate when state claims raise novel issues of state law).  At the hearing, Defendants argued in favor of exercising jurisdiction because the remaining state law claims share a common nucleus of operative fact with the dismissed federal claims.  While that test is used to determine whether supplemental jurisdiction exists in the first instance, *see* 28 U.S.C. § 1367(a); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004), it is not the test the Court uses to determine, in its discretion, whether to nonetheless decline to exercise supplemental jurisdiction under circumstances like those here. *See* 28 U.SC. § 1367(c).  Consequently, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Under the present circumstances, remand, as opposed to dismissal, is appropriate.  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1865 (2009) (recognizing district court's authority to remand case to state court after declining to exercise supplemental jurisdiction).  Given the passage of time since Defendants' alleged unlawful conduct, and the age of the case, certain statute of limitations may have expired.  *See Carnegie-Mellon*, 484 U.S. at 351–52 ("[A] remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case.").  Assuming this is

so, a dismissal would prevent Plaintiff from litigating his state law claims. *See id.* at 352.

Even if the applicable statute of limitations has not expired, remand will promote economy, convenience, fairness, and comity. A dismissal would increase both the expense and the time involved in enforcing state law because Plaintiff would be required to refile his case, Defendants would have to respond for a second time, and the state court would have to reprocess the case. *See id.* at 353 (increasing the expense and time involved in enforcing state law, "even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate").

For these reasons, the Court declines to exercise supplemental jurisdiction and REMANDS the parties' state law claims to the Circuit Court of the First Circuit, State of Hawaiʻi. *See Honokaia ʻOhana v. Park*, Civ. No. 09-00395 ACK-LEK, 2010 WL 4273083, *13 (D. Haw. Oct. 25, 2010); *Nye v. Hilo Med. Ctr.*, Civil No. 09-00220 JMS/KSC, 2010 WL 931926, *8 (D. Haw. Mar. 11, 2010); *Thorn v. BAE Sys. Hawaii Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1226 (D. Haw. 2008).

# IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for

Summary Judgment; GRANTS IN PART Defendants' motion as to Plaintiff's

federal claims; and REMANDS the parties' remaining state law claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, March 6, 2020.



Jill A. Otake
United States District Judge

Civil No. 19-00179-JAO-KJM, *Lesane v. Hawaiian Airlines, Inc., et al.*, ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT; AND REMANDING STATE CLAIMS

28